IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HENRY A. JONES,

      Plaintiff,                              No. CIV S-10-3206 MCE EFB P

     vs.

SAHOTA, et al.,

      Defendants.                   <u>ORDER AND</u>
                                               <u>FINDINGS AND RECOMMENDATIONS</u>
_____/

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. This action currently proceeds on plaintiff's first amended complaint, filed February 9, 2011. He has filed a second amended complaint which the court construes as a motion for leave to amend. He has also filed motions for injunctive relief, *see* Dckt. Nos. 45, 28, and 38, and has responded to the court's August 12, 2011 order directing him to provide additional instructions for service on defendant Suharto. Additionally, plaintiff has filed a motion for appointment of counsel, which is addressed in a separate order. *See* Dckt. No. 37. Finally, plaintiff has filed a motion "resigning" as a pro se litigant and a motion seeking to amend his allegations against defendant Vasquez. Dckt. Nos. 48, 49.

////

////

1

## I. Motion "Resigning" as a Pro Se Litigant

On October 25, 2011, plaintiff filed a document styled "Motion Resigning as Pro Se Litigation for Medical Reasons." Dckt. No. 48. Plaintiff writes that he is unable to litigate this case. *Id*. at 1. Plaintiff discusses mental and physical illnesses, his reading disability, and his lack of understanding of court papers and procedures. *Id.* However, it does not appear from this filing that plaintiff seeks to voluntarily dismiss this case. (If plaintiff does wish to dismiss his case, he may do so under Fed. R. Civ. P. 41(a).)

Rather, plaintiff's filing appears to be argument is support of a motion for the appointment of counsel, which the court addresses in a separate order.

## II. Motion to Amend the Complaint

On October 4, 2011, plaintiff filed a document titled "amended complaint and motion re: injunctive relief,"[1] containing new factual allegations against defendants Vasquez and Thompson, who have been dismissed from this action. *See* Dckt. Nos. 45, 40. The document does not contain all of the claims in plaintiff's first amended complaint against defendants Sahota, Jaffe, Venderstyme, Suharto, and Jaffe. *See* Dckt. No. 45. Plaintiff writes, "I ask the court to grant my amended complaint and amend Vasquez to the suit." *Id.* at 4. Additionally, on October 25, 2011, plaintiff filed a motion further amending his allegations against defendant Vasquez. Dckt. No. 49. The court construes plaintiff's filings as motions to amend his complaint.

Defendants oppose plaintiff's motion to amend, arguing that any amendment would be futile because defendants Vasquez and Thompson have already been dismissed from this action. *See* Dckt. Nos. 47, 40.

After a responsive pleading is filed, a party may amend its pleading only with the opposing party's written consent or the court's leave, which should be freely given "when justice

---

[1] The "injunctive relief" portions of plaintiff's filing are addressed in the "Preliminary Injunction" section of this order.

so requires." Fed. R. Civ. P. 15(a); *Amerisource Bergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." *Id*. Here, defendants had filed their responsive pleading before plaintiff filed his motion to amend. *See* Dckt. No. 42.

As noted above, plaintiff's proposed amended complaint does not contain all of the allegations in the operative complaint, but does contain new factual allegations against Vasquez and Thompson. Plaintiff's filing gives no indication that he seeks to voluntarily dismiss the claims in the operative complaint. Rather, it appears that he wishes to supplement rather than amend the operative complaint.

Plaintiff has not complied with Local Rule 220 (changed pleadings), which provides that "every pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading." Local Rule 220; *see Loux v. Thay*, 375 F.2d 55, 57 (9th Cir. 1967). Any amendments to the complaint must comply with this rule. Accordingly, plaintiff's motion to amend his complaint is denied without prejudice.

III.    Service Information for Defendant Suharto

On August 12, 2011, after the United States Marshal was unable to obtain a waiver of service for defendant Suharto because "Sac does not have an employee or contractor by that name" and the defendant's name was not listed in the CDC locator, the court directed plaintiff to provide additional instructions for serving defendant Suharto within 60 days. *See* Dckt. Nos. 29, 32.

On September 24, 2011, plaintiff submitted a completed USM-285 form for defendant "Sahota" instead of "Suharto" and attached a document which explains "Sahota" works at the California State Prison-Sacramento and advises that Linda Young, the litigation coordinator, can

3

assist in locating and serving "Sahota." Dckt. No. 34. Plaintiff again listed "Warden Viga" as the person to serve at California State Prison-Sacramento ("CSP-Sac") with the summons and complaint for defendant "Sahota." This is the same person plaintiff previously listed for defendant Suharto. On October 4, 2011, plaintiff filed a document stating that he had sent back a summons form for "Suharto." *See* Dckt. No. 46.

Plaintiff has failed to provide additional instructions to serve defendant Suharto. However, it appears that there may be some confusion due to the similarity of defendants Suharto and Sahota's name. Defendant Sahota has been served; Suharto has not. *See* Dckt. No. 41. The court grants plaintiff one more chance to submit sufficient information to effect service on defendant Suharto.[2]

IV.  Motions for a Preliminary Injunction

Plaintiff has filed motions for injunctive relief requesting the court to order defendants to treat plaintiff's insomnia with insomnia medication. *See* Dckt. Nos. 21, 28, 45. On August 21, 2011, the court ordered defendants to respond to plaintiff's requests. Dckt. No. 31. Defendants filed a response on August 23, 2011 objecting to plaintiff's requests. Dckt. No. 33. On October 4, 2011, plaintiff filed a document entitled "objections to declaration of C. Paizis and motion for injunctive relief," which the court construes as a reply. Dckt. No. 38.

In support of his motions, plaintiff alleges he took sleep aid medication in federal prison and "on the streets," but when he was transferred to CDC in March 2005, he was told CDC does not treat insomnia. Dckt. No. 28 at 1; Dckt. No. 38 at 9. Plaintiff asserts he routinely files 602 appeals to request sleep aid medication but his requests have not been granted. Dckt. No. 21 at 1-2. Plaintiff argues that in retaliation for filing this lawsuit, his psychiatrist, Dr. Grubbs, has not treated his insomnia. Dckt. No. 45, Ex. B. at 3.

---

[2] Suharto's name may have been misspelled in plaintiff's summons. *See* Dckt. No. 29 (unexecuted summons stating "unable to id Suarto"). Plaintiff may wish to try using the spelling "Suharto."

4

Plaintiff challenges CSP-Sac's current course of treatment, stating that he wants medication, not cognitive behavior therapy. Dckt. No. 28 at 3. Plaintiff argues that cognitive behavior therapy is not adequate treatment because he is incarcerated and under stressful conditions and that "just talking to a psychiatrist would not help . . . [his] conditions." *Id.* at 2. Plaintiff alleges people have died from sleep deprivation. *Id.* at 2. Plaintiff attaches an August 18, 2010 letter from Prison Health Care Services showing that he is currently being prescribed citalopram and mirtazepine, which are not sleep aid medications. *Id.* at 4, 7, 8.

Plaintiff alleges that he experiences pain, headache, anxiety, suicidal thoughts, and hopelessness. Dckt. No. 38 at 5. He alleges that he was transferred to the Department of Mental Health at Salinas Valley State Prison and while in custody there, the prison doctors conducted a sleep study of plaintiff and administered him Ativan. *Id.* at 6. Plaintiff also alleges that U.C. Davis Medical Center has recommended to CSP-Sac that plaintiff needs a "neurology-sleep clinic referral," and that CSP-Sac has ignored the recommendation and has "scratched it out" in his medical records. *Id.* at 2. Plaintiff requests that CDC to be sanctioned $1,000 a day until they comply with plaintiff's request for adequate sleep aid medication. *Id.* at 2.

Plaintiff attaches a sleep consultation and recommendation completed by Deepak Shrivastava, M.D., at San Joaquin Hospital, who saw plaintiff on August 18, 2010.[3] Dckt. No. 28 at 1; *see also* Dckt. 28, Attach. 1. Plaintiff alleges that the defendants have not followed up on Dr. Shrivastava's recommendations and states that medication has not been administered, that plaintiff has not received therapy, and that plaintiff has not formed a relationship with a qualified psychiatrist. *Id.*

Plaintiff alleges CSP-Sac has a policy of only treating primary sleep disorders. Dckt. No. 38 at 6. In support of that allegation, plaintiff attaches a January 8, 2010 decision issued by CSP-Sac denying plaintiff's appeal for sleep aid medication. In that decision, A. Deems, Chief

---

[3] Plaintiff attaches the first page of Dr. Shrivastava's two page report. The first page does not contain Dr. Shrivastava's impressions or treatment recommendations.

5

Executive Officer at CSP-Sac states:

> "Your appeal was DENIED at the FLR [first level review]. The first level reviewer responded as follows: Your appeal is denied. It is the prison's policy to only treat primary sleep disorders (i.e. narcolepsy, sleep apnea, etc.) . . . ."

Dckt. No. 38, Ex. C at 2 (emphasis in original).

Plaintiff also attaches medical records from U.C. Davis Hospital documenting a request he made for treatment for chronic insomnia to Alyssa Camille Browning, M.D. on March 28, 2010. Dckt. No. 38, Ex. A at 3-8. Plaintiff informed Dr. Browning that he was previously treated by Benadryl and Ativan. *Id.* at 3. In response to plaintiff's request, Dr. Browning wrote:

> "Insomnia: he is already on mirtazepine. He reports chronic insomnia. I recommend d/w with an internist or psychiatrist . . .[at] prison, but also recommended trying nonpharmalogic methods of treating insomnia (relaxation techniques, biofeedback, etc.)."

*Id.* at 8.

Additionally, plaintiff attaches an article on sleep deprivation and sleep debt.[4] Dckt. No. 28, Ex. E. This article states the short term consequences of sleep deprivation include: decreased daytime alertness; impaired memory and cognitive ability; increased risk of sustaining an occupational injury; and an impaired immune system. *Id.* at 3. The long term consequences of sleep deprivation can include: high blood pressure; heart attack; heart failure; stroke; psychiatric problems such as depression and other mood disorders; mental impairment; increased mortality risk; relationship problems with a bed partner; and obesity. *Id.*

In his most recent filing, plaintiff states Dr. Grubbs has started plaintiff on zolpidem to treat plaintiff's insomnia. Dckt. No. 48 at 4. Zolpidem is a nonbenzodiazepine hypnotic used to treat insomnia. *See Merck Manual of Diagnosis and Therapy*, 3103 (Nineteenth Ed. 2011). In smaller doses, zolpidem has been effective for sleep induction, whereas in larger doses, it has been found to be effective both with sleep induction and sleep maintenance. *Id.* at 1709.

---

[4] The source and author of this document are unknown.

Defendants oppose plaintiff's request for a preliminary injunction. Defendants submit the declaration of C. Paizis, D.O., the Senior Psychiatrist Supervisor at CSP-Sac.[5] Dckt. No. 33; Paizis Decl., Dckt. No. 33-1. From a review of the documents in plaintiff's medical file and Dr. Shrivatava's sleep medicine consultation, Dr. Paizis' medical opinion is that plaintiff is receiving appropriate and adequate medical care. *Id.* ¶ 9. Specifically, Dr. Paizis opines plaintiff is receiving proper medical care for his symptoms through the prescriptions to treat his mental illness and through regular and repeated sessions of therapy. *Id.* Dr. Paizis declares that plaintiff is currently being treated for depression, of which insomnia is a symptom. *Id.* ¶ 5. Dr. Paizis attests plaintiff is currently prescribed citalopram, an antidepressant, and a low dose of risperdal, an antipsychotic, to treat his mental illnesses. *Id.* ¶ 4. Dr. Paizis contends plaintiff has a history of suicide attempts and auditory hallucinations and that insomnia is fairly common with depression and hallucinations. *Id.* ¶ 6. Dr. Paizis contends the treatment of the major mental illness is the appropriate path for plaintiff and within the standard of care for treatment of patients with like symptoms and complaints. *Id.* Dr. Paizis opines "[s]leep medications are primarily useful for temporary insomnia, not chronic issues which is the case here" and contends the medications plaintiff is requesting are mostly "addictive and contraindicated in a prison environment." *Id.* ¶ 7. Dr. Paizis declares that plaintiff is currently assigned to a psychologist or social worker for group therapy routinely, meets with his primary clinician on a weekly basis, and is assigned to a minimum of ten hours a week of therapy. *Id.* ¶ 8. Additionally, plaintiff meets with his psychiatrist monthly. *Id.*

Paizis also reviewed Dr. Shrivastava's report which plaintiff relies on in his motion for injunctive relief. *Id*. ¶ 2. Defendants note plaintiff failed to include the second page of Dr.

---

[5] In his reply, plaintiff alleges Dr. Paizis is not an expert in treatment of sleep disorders and that Dr. Paizis is not a real doctor, but a "D.O." Dckt. No. 38. C. Paizis, D.O., is a licensed physician, board certified in the area of General, Forensic, and Addiction Psychiatry. Dckt. 33-1 ¶ 2. She has been employed by CDCR for fifteen years and has worked in the position of Senior Psychiatrist Supervisor for the past two years. *Id.*

7

Shrivastava's report which contains Dr. Shrivastava's recommended course of treatment.[6]  Dckt. No. 47 at 2.  Based upon an examination of plaintiff and a review of plaintiff's history, Dr. Shrivastava recommended that plaintiff be referred to a psychiatrist for cognitive behavior therapy, that pharmaceutical therapy for plaintiff's insomnia was counterproductive, and that plaintiff enter into a long-term relationship with a psychiatrist.  Dckt. 33, Ex. A at 2.

A. Standards

A preliminary injunction will not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  A preliminary injunction represents the exercise of a far reaching power not to be indulged except in a case clearly warranting it.  *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964).  In order to be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008)).  The Ninth Circuit has also held that the "sliding scale" approach it applies to preliminary injunctions—that is, balancing the elements of the preliminary injunction test, so that a stronger showing of one element may offset a weaker showing of another—survives *Winter* and continues to be valid.  *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010).  "In other words, 'serious questions going to the merits,' and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met.'"  *Id*.

////

---

[6] Defendants include Dr. Shrivastava's entire report as Exhibit A to their Dr. Paizis' declaration.

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

### B. Likelihood of Success on the Merits

Plaintiff has not shown a likelihood of success on the merits on his claim that defendants' refusal to prescribe him sleep aid medication constitutes deliberate indifference. To prevail on a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). He must show both that his medical needs were objectively serious and that defendants possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See, e.g., McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A physician need not

1  fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.
2  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a
3  serious medical condition, even if some treatment is prescribed, may constitute deliberate
4  indifference in a particular case.  *Id.*

5  However, it is important to differentiate common law negligence claims of malpractice
6  from claims predicated on violations of the Eighth Amendment's prohibition of cruel and
7  unusual punishment.  In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical
8  malpractice' will not support this cause of action."  *Broughton v. Cutter Laboratories*, 622 F.2d
9  458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391
10 F.3d 1051, 1057 (9th Cir. 2004).  It is well established that mere differences of opinion
11 concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.
12 *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344
13 (9th Cir. 1981) ("difference in opinion between a prisoner-patient and prisoner medical
14 authorities regarding treatment does not give rise to a § 1983 claim"); *Sanchez v. Vild*, 891 F.2d
15 240, 242 (9th Cir. 1989) (a difference in opinion between medical personnel does not amount to
16 deliberate indifference).  "To prevail on a claim involving the choices between alternate courses
17 of treatment, a person must show that a chosen course of treatment 'was medically unacceptable
18 under the circumstances' and was chosen in conscious disregard of an excessive risk to
19 [plaintiff's] health."  *Toguchi*, 391 F.3d at 1058 (quoting *Jackson*, 90 F.3d at 332).

20 Here, plaintiff has not demonstrated a likelihood of success on the merits.  First,
21 plaintiff's latest filing implies that he is now receiving medication for his insomnia, which would
22 render his request for injunctive relief moot.  *See* Dckt. No. 48 at 4.  Second, even if this
23 information is incorrect and plaintiff is not currently being prescribed sleep aid medication, on
24 the evidence currently before the court, it is not likely that plaintiff will be able to demonstrate
25 more than a difference of opinion concerning the appropriate medical treatment for his insomnia.
26 ////

10

1  The treating doctors at CSP-Sac, Dr. Browning, and Dr. Shrivastava all recommended that
2  plaintiff see a psychiatrist or participate in cognitive behavior therapy to treat plaintiff's
3  insomnia.  Dr. Paizis's medical opinion is that plaintiff is receiving adequate and proper care.
4  Dckt. No. 33-1 ¶ 9.  Morever, Dr. Browning recommended nonpharmalogic methods to treat
5  plaintiff's insomnia and Dr. Shrivastava's impression was that pharmaceutical treatment would
6  be counterproductive.  *See* Dckt. No. 38, Ex. A 8; *see also* Dckt. 33, Ex. A at 2.  CSP-Sac
7  doctors have opined that plaintiff's insomnia is a symptom of depression, and they are treating
8  his underlying depression.  Dckt. No. 33-1 ¶¶ 5-9.  Defendants' failure to follow Dr. Browning's
9  recommendation of plaintiff for a neurology sleep clinic referral also does not amount to a
10 deliberate indifference.  *Sanchez*, 891 F.2d 240, 242 at (a difference in opinion between medical
11 personnel does not amount to deliberate indifference).  Plaintiff has not offered evidence
12 demonstrating CSP-Sac's course of treatment or policy is "medically unacceptable under the
13 circumstances . . . and that [defendants'] chose this course in conscious disregard of an excessive
14 risk to plaintiff's health."  *Jackson*, 90 F.3d at 332.  Thus, at this stage in the litigation, plaintiff
15 has not shown that his demand for sleep aid medication amounts to more than a difference in
16 opinion as to the nature and extent of plaintiff's condition and the methodology of treatment.  *See*
17 *Franklin*, 662 F.2d at 1344; *Sanchez*, 891 F.2d at 242.  For the purpose this motion, plaintiff has
18 failed to demonstrate a likelihood of success on the merits of his Eighth Amendment claim.

19      C.      Irreparable Injury

20      In addition, plaintiff has not clearly demonstrated that he will suffer irreparable injury if
21 his motion is not granted.  "Preliminary injunctive relief is available only if [plaintiff]
22 'demonstrate[s] that irreparable injury is likely in the absence of an injunction.'"  *Johnson v.*
23 *Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 21).  Under *Winter*,
24 a preliminary injunction may not be granted based only on the possibility of irreparable harm,
25 because such a result would be inconsistent with the court's characterization of injunctive relief
26 as an extraordinary remedy only to be awarded upon a clear showing that the plaintiff is entitled

to such relief. 555 U.S. at 22. To meet the irreparable harm requirement, plaintiff must do more than simply allege harm; he must demonstrate it. *Carribean Marine Servs. Co., Inc., v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Mere "[s]peculative injury does not constitute irreparable injury to warrant granting a preliminary injunction." *Id.*

Again, plaintiff's latest filing implies that he is now receiving medication for his insomnia, which would render his request for injunctive relief moot. *See* Dckt. No. 48 at 4. Even if plaintiff were not receiving medication, his filings do not demonstrate that he will suffer irreparable harm in the absence of medical treatment. Plaintiff attaches an article on the short and long term effects of sleep deprivation, including high blood pressure, heart attack, heart failure, stroke, psychiatric problems such as depression and other mood disorders, mental impairment, increased mortality risk, relationship problems with a bed partner, and obesity. However, he has not submitted evidence demonstrating that he suffers from these problems, or that even if he does, that those problems would be alleviated by sleep aid medication in his particular case. Plaintiff does allege that his insomnia causes him physical pain, headaches, anxiety, anger, suicidal thoughts and hopelessness, but he has submitted no medical evidence showing that these symptoms would be alleviated by medication. Dckt. No. 28 at 5. Further, plaintiff has not demonstrated that he will suffer irreparable harm by suffering from these symptoms during the pendency of this lawsuit.

        D.       <u>Balance of the Hardships and Public Interest</u>

A party seeking injunctive relief "must establish . . . that the balance of equities tips in his favor and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. In assessing whether a party has met this burden, the district court has a "duty . . . to balance the interests of all parties and weight the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). Additionally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. (quotation marks

and citation omitted).  "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.' " *Stormans, Inc.*, 586 F.3d at 1138-39 (citing and quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003)).

Here, the balance of equities to tips in favor of the plaintiff.  Preserving plaintiff's health must be balanced against the potential monetary costs of administering insomnia medication and the prison's preference to not distribute sleep aid medication as it is addictive and contraindicated in a prison environment.  physical harm to an individual over monetary costs to government entities. *See Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) ("faced with [] a conflict between financial concerns and preventable human suffering, [the court has] little difficulty in concluding that the balance of hardships tips decidedly in plaintiff's favor.")  Thus, the balance of equities factor weighs in favor of granting the preliminary injunction.  The court finds that the public interest is a neutral factor as the reach of the requested injunction is narrow and has no impact on non-parties. *Id.*

While the balance of equities tips in plaintiff's favor, plaintiff has failed to demonstrate that he will likely prevail on the merits and that he will suffer irreparable injury if injunctive relief is not granted.  Accordingly, plaintiff's request for a preliminary injunction should be denied.

V.   Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to amend his complaint is denied without prejudice.

2. The Clerk of the Court shall mail plaintiff one form USM-285 and a copy of the pleading filed February 9, 2011.

////

////

3. Within 30 days from the date this order is served, plaintiff may submit the attached Notice of Submission of Documents with a completed form USM-285 providing instructions for service of process upon defendant Suharto and two copies of the pleading provided to plaintiff.

4. Failure to provide new instructions for service of process upon defendant Suharto within the time allowed or show good cause for such failure will result in a recommendation that this action be dismissed as to that defendant.

5. The Clerk of the court is directed to terminate docket entries 48 and 49.

Further, it is hereby RECOMMENDED that plaintiff's motion for injunctive relief be denied, and the Clerk be directed to terminate docket entries 28 and 38.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 30, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HENRY A. JONES,

        Plaintiff,                       No. CIV S-10-3206 MCE EFB P

    vs.

SAHOTA, et al.,

                                       NOTICE OF SUBMISSION
        Defendants.               OF DOCUMENTS
_____/

        Plaintiff hereby submits the following documents in compliance with the court's order filed _____.

        One        completed summons

        ____        completed USM-285 forms

        ____        copies of the February 9, 2011 amended complaint

DATED:

                                                      _____
                                                      Plaintiff