IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HENRY A. JONES,

      Plaintiff,                    No. 2:10-cv-3206 MCE EFB P

    vs.

SAHOTA, et al.,

      Defendants.              FINDING AND RECOMMENDATIONS

                              /

       Plaintiff is a state prisoner proceeding without counsel and in forma pauperis in an action brought under 42 U.S.C. § 1983. This action proceeds on plaintiff's claim that defendants Sahota, Jaffe, and Van Derostyne responded to plaintiff's chronic insomnia with deliberate indifference in violation of the Eighth Amendment. Defendants move for summary judgment on the grounds that there is no evidence to support plaintiff's claim of deliberate indifference and in the alternative, that they are entitled to qualified immunity.[1] The undersigned finds that there is no genuine dispute as to any material fact, and that defendants' motion must be granted.

---

[1] Defendants' motion, originally filed on May 9, 2012, was re-filed and re-served on August 14, 2012, in accordance with the court's July 31, 2012 order. *See* Dckt. No. 102 (ordering defendants to re-serve the motion along with the notice to plaintiff required by *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012) and granting plaintiff leave to file an amended opposition). On September 24, 2012 and October 1, 2012, plaintiff filed oppositions to the motion, Dckt. Nos. 117, 118, and on October 3, 2012, defendants filed a reply, Dckt. No. 119.

1

## I.     Background

This action proceeds on plaintiff's Eighth Amendment claim against defendants Sahota, Van Derostyne, and Jaffe. *See* Dckt. Nos. 12, 14, 124. Plaintiff alleges that he suffers from serious mental illness and chronic insomnia. Dckt. No. 12 ¶¶ 5, 6. He claims that defendants were deliberately indifferent to his chronic insomnia by denying his requests for sleep medicine, a sleep study, and a single cell. *Id.* ¶ 75.

Plaintiff claims that in 2009, he spent two and a half months in the Department of Mental Health in the Salinas Valley State Prison. *Id.* ¶ 31. While there, he was allegedly prescribed Ativan, which provided relief from the insomnia for about nine days. *Id.* ¶ 32. Soon thereafter, plaintiff alleges he returned to California State Prison, Sacramento, where the Ativan was discontinued. *Id.* ¶¶ 33, 34. Plaintiff alleges he made constant requests for treatment only to be told that the California Department of Corrections and Rehabilitation does not treat sleep disorders. *Id.* ¶ 34. He also claims that he wrote a letter to defendant Jaffe, the prison's Chief Psychologist, seeking help, and that Jaffe indirectly communicated to plaintiff that he would not help him. *Id.* ¶¶ 13, 60, 61, Ex. F.

Plaintiff alleges that on April 21, 2010, a doctor submitted a request to the Medical Authorization Review (MAR) Committee for plaintiff to receive a sleep study at UC Davis. *Id.* ¶ 45, Ex. B. Plaintiff claims that the MAR Committee and defendant Sahota, the prison's Chief Physician, denied the request. *Id.* ¶¶ 7, 46, Ex. B.

Plaintiff claims that defendant Van Derostyne, who had been plaintiff's clinician for over four years, knew that plaintiff was prone to violence because of his insomnia. *Id.* ¶ 48. He allegedly asked Van Derostyne if he could be placed in a single cell because his voices were commanding him to hurt his cellmate. *Id.* ¶¶ 48, 49. Plaintiff claims that shortly thereafter, he attacked his cellmate. *Id.* ¶ 53, Ex. D.

////

////

2

## II. Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving

3

party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual

1  claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.
2  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit
3  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue
4  for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to
5  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such
6  that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,
7  477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

8       The court does not determine witness credibility. It believes the opposing party's
9  evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;
10 *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the
11 proponent must adduce evidence of a factual predicate from which to draw inferences. *American*
12 *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,
13 dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts
14 at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441
15 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational
16 trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*,
17 475 U.S. at 587 (citation omitted); *see also Celotex.*, 477 U.S. at 323 (If the evidence presented
18 and any reasonable inferences that might be drawn from it could not support a judgment in favor
19 of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking
20 any genuine dispute over an issue that is determinative of the outcome of the case.

21      Defendant's re-filed motion for summary judgment included a notice to plaintiff
22 informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal
23 Rules of Civil Procedure. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*,
24 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v.*
25 *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

26 ////

### III. Analysis

The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference. *Jackson*, 90 F.3d at 332. Rather, the plaintiff must show that the course chosen by the defendants was medically unacceptable under the circumstances. *Jackson*, 90 F.3d at 332. When a prisoner alleges a delay in medical treatment, he must show the delay caused an injury. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several day delay in treatment did not

6

violate Eighth Amendment where there was no emergency and given plaintiff's condition, i.e., a severe shoulder injury, the only remedy immediately available was painkillers).

Plaintiff contends that defendants' refusal to treat his insomnia constitutes deliberate indifference. Defendants move for summary judgment on the ground that there is no evidence to support plaintiff's claim of deliberate indifference. As discussed below, defendants have shown that there is no genuine dispute as to any material fact, and the court finds that they are therefore entitled to judgment as a matter of law.

After defendants filed their summary judgment motion, plaintiff filed a document titled "Sworn Affidavits By Witnesses." Dckt. No. 110. It includes affidavits of six different inmates who state that they were "in the cell" with plaintiff and are willing to testify regarding "his mental and sleep deprived condition." *Id.* Defendants object to the inmate affidavits because they fail to provide any information as to when each inmate shared a cell with plaintiff, or what, if anything, each inmate witnessed. Dckt. No. 114. For this reason, the court finds the affidavits to present little, if any, relevant information bearing on whether defendants were deliberately indifferent to plaintiff's medical needs.

Plaintiff also requested a court order allowing him to telephone his ex-wife so that she could testify that plaintiff had been treated with a sleep aid for his insomnia prior to his incarceration. Dckt. No. 110. Plaintiff's request is denied. He was previously given the opportunity to conduct discovery to support his claim. *See* Dckt. No. 50 (October 31, 2011 Discovery and Scheduling Order). Moreover, defendants' motion for summary judgment provided plaintiff with notice that his opposition must include proof of his claims. Dckt. No. 109-2. It appears that plaintiff could have submitted his own declaration, based on his own personal knowledge, that he had been treated with a sleep aid for his insomnia prior to his incarceration, but failed to do so. Furthermore, obtaining such a declaration would not materially assist plaintiff in defeating the motion. As argued by defendants, whether or not plaintiff was treated prior to his incarceration is not relevant to determining whether the

defendants acted with deliberate indifference to plaintiff's medical needs. Dckt. No. 114.

The record on summary judgment establishes that plaintiff has been diagnosed with personality disorder, major depressive disorder with psychotic features, schizophrenia, anxiety disorder, and obsessive compulsive disorder. Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Stmt. of Undisp. Facts in Supp. Thereof ("DUF") 35; Pl.'s Reply to DUF ("Dckt. No. 118"). Plaintiff also has chronic insomnia. DUF 87; Dckt. No. 118. Insomnia is common in people with diagnosed depression and other mental health disorders. DUF 36; Dckt. No. 118. As explained in the declaration of Dr. Sahota (Dckt. No. 79-7, ¶ 5), California State Prison, Sacramento treats primary sleep disorders such as narcolepsy and sleep apnea. It does not treat secondary sleep disorders wherein sleep problems are secondary to another medical condition, such as anxiety or depression. Primary insomnia is sleeplessness that is not attributable to medical, psychiatric or environmental cause. Dr. Sahota notes that people with depression can have many types of sleep problems including difficulty getting off to sleep and difficulty staying asleep and insomnia is fairly common with depression and hallucinations. Dr. Sahota further notes that a sleep study is not within the treatment and services available under Title 15 §3350, and therefore a physician must submit a request to the MAR Committee. A sleep study is generally conducted to rule out sleep disorders, like sleep apnea. However, a sleep study is not generally conducted to rule out insomnia. *Id.*

Since 2006, plaintiff has been enrolled in the Enhanced Outpatient Program, which is designed for inmates who have difficulty adjusting to living in the general population but who are not so disabled that they require inpatient care. DUF 15; 37; Dckt. No. 118. Defendant Linda Van Derostyne, plaintiff's EOP clinician, saw plaintiff at least once a week in accordance with the EOP program procedures. DUF 38, 39; Dckt. No. 118.

In 2010, a sleep specialist who conducted a sleep study on plaintiff recommended that plaintiff receive only cognitive therapy and not a combination of pharmaceutical and cognitive therapy. DUF 88; Dckt. No. 118. The sleep specialist also stated that given plaintiff's long

history of insomnia and his life situation, pharmaceutical therapy may be counterproductive. DUF 89; Dckt. No. 118.

Although plaintiff was prescribed Ativan through the Salinas Valley Psychiatric Program, none of plaintiff's psychiatrists or primary care providers at California State Prison, Sacramento, prescribed it for him. DUF 44, 45, 46, 49; Dckt. No. 118.

Plaintiff contends that defendants were deliberately indifferent by failing to prescribe Ativan to treat his insomnia, but he does not produce any evidence to support this contention. Furthermore, the record shows that Ativan is not used to treat chronic conditions and providers are extremely cautious when prescribing it. DUF 53; Dckt. No. 118. Ativan is contraindicated for use in prison because it is likely to cause dependence as tolerance increases. DUF 53; Defs.' MSJ, Sahota Decl. ¶¶ 7-8; Dckt. No. 118. At California State Prison, Sacramento, therefore, Ativan is not prescribed to treat insomnia and is restricted to the treatment of acute agitation in psychiatric diagnoses or "delirium tremens." DUF 50, 51; Dckt. No. 118. Plaintiff only received Ativan for a short time through the Salinas Valley Psychiatric Program because it is a mental health treatment center which requires less restricted use of mental health medication. DUF 52; Dckt. No. 118. Although plaintiff claims that Ativan provided him some relief from his chronic insomnia, he fails to show that the denial of Ativan at California State Prison, Sacramento, was medically unacceptable under the circumstances. *See Jackson*, 90 F.3d at 332.

Plaintiff admits that defendant Van Derostyne could not prescribe Ativan for him because she is a social worker, not a doctor. DUF 54, 55; Dckt. No. 118. However, plaintiff contends that Van Derostyne should have taken his request for Ativan to a supervisor who could have prescribed it for him. Pl.'s Opp'n to Defs.' MSJ ("Dckt. No. 117"), Pl.'s Decl. ¶ 7; Dckt. No. 118. But plaintiff has not demonstrated that Van Derostyne failed to forward his request for Ativan to a supervisor. Nor does plaintiff explain why he could not make such a request himself.
////
////

9

1  Thus, plaintiff fails to show that he faced a substantial risk of serious harm without Ativan, and
2  that Van Derostyne disregarded that risk by failing to take reasonable measures to abate it. *See*
3  *Farmer*, 511 U.S., at 847.

4  Further, defendant Michael Jaffe, Chief Psychologist at California State Prison,
5  Sacramento, declares that even if plaintiff had requested Ativan through him, he would not have
6  intervened in plaintiff's care because plaintiff was receiving adequate care in the EOP program
7  and because Ativan is not prescribed to treat insomnia at California State Prison, Sacramento.
8  Defs.' MSJ, Jaffe Decl. ¶¶ 3, 4. Plaintiff also admits that he has never even met or been
9  examined by defendant Preetanjan Sahota, Chief Physician and Surgeon at California State
10 Prison, Sacramento. DUF 3, 7; Dckt. No. 118.

11 Throughout his opposition, plaintiff maintains that each defendant was aware of his
12 insomnia and failed to provide him with a course of treatment that he claims was effective. *See*
13 Dckt. No. 117. However, plaintiff's mere contention that he needed a particular medical
14 treatment, here, Ativan, cannot give rise to a section 1983 claim. *See Franklin*, 662 F. 2d at
15 1344; *Stocker v. Warden*, No. 1:07-cv-0589 LJO DLB, 2009 U.S. Dist. LEXIS 31207, at *26-27
16 (E.D. Cal. Apr. 13, 2009) (citing *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The
17 plaintiff] is not entitled to demand specific care. [He] is not entitled to the best care possible.
18 [He] is entitled to reasonable measures to meet a substantial risk of serious harm to [him].")).

19 Nor has plaintiff demonstrated that any defendant was deliberately indifferent by denying
20 his request for a sleep study. On April 21, 2010, plaintiff's primary care provider submitted a
21 request to the MAR Committee for plaintiff to undergo a sleep study. DUF 66; Dckt. No. 118.
22 The MAR Committee is a collaborative team of treating physicians and nurse practitioners who
23 thoroughly discuss and evaluate a patient's medical condition and treatment and determine
24 whether a physician request for services is medically indicated and necessary at the time. DUF
25 23; Dckt. No. 118. Defendant Sahota approved the MAR Committee's April 27, 2010 decision
26 to deny the April 21st request because there was not enough information provided to determine

if a sleep study was warranted. Defs.' MSJ, Sahota Decl. ¶¶ 12, 13. Moreover, sleep studies are generally conducted to rule out certain health conditions, like sleep apnea, rather than to rule out a condition like insomnia. *Id.* ¶ 5. Although plaintiff contends that the MAR Committee, including defendant Sahota, had enough information to grant the April 21st request, he fails to support this assertion with any evidence. *See* Dckt. No. 17 at 10; Dckt. No. 118. Plaintiff submits copies of medical records from his 2009 participation in the Salinas Valley Psychiatry Program and various referrals for a sleep study. Dckt. No. 117, Exs. A, E.[2] However, plaintiff fails to show how any of these documents are relevant to determining whether the MAR Committee was presented with enough information on April 27th to grant the April 21st request. Dckt. No. 117 at 10. Regardless, defendant Sahota declares that the MAR Committee's denial of the sleep study request was medically appropriate, Defs.' MSJ, Sahota Decl. ¶ 13, and plaintiff fails to submit any evidence to the contrary or otherwise create a genuine dispute of material fact as to whether Sahota, or any other defendant, was deliberately indifferent to plaintiff's chronic insomnia by denying the request. Plaintiff's opposition suggests a difference of opinion between himself and the MAR Committee or Dr. Sahota, or between the MAR Committee or Sahota and the doctor requesting a sleep study on plaintiff's behalf. Such disagreements cannot be the basis of an Eighth Amendment violation. *See Jackson v. McIntosh*, 90 F.3d at 332; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Additionally, the MAR Committee granted a June 24, 2010 request for plaintiff to undergo a sleep study, which took place on August 18, 2010. DUF 84, 86. Plaintiff fails to demonstrate how the delay in receiving this sleep study injured him. *See McGuckin*, 974 F.2d at 1060.

Finally, plaintiff contends that defendants should have provided him with single-cell status because his lack of sleep caused problems with his cellmate. Dckt. No. 117 at 15. On

---

[2] Defendants object to plaintiff's Exhibit A and Exhibit E as lacking authentication. Dckt. No. 119-1. Defendants' inclusion of many of these same documents with their motion calls into question whether there is a good faith factual basis for these objections, which are overruled. *See* Defs.' MSJ, Aldred Decl., Ex. A, B, C.

May 20, 2010, plaintiff and his cellmate got into a fight. DUF 75; Dckt. No. 118. Around this time, Van Derostyne was seeing plaintiff for approximately one hour twice a week, which is more than what is required in the EOP program. DUF 77; Dckt. No. 118. On May 17, 2010, plaintiff told Van Derostyne that he had a lot of anger toward his cellmate, but did not feel suicidal or homicidal. DUF 74; Defs.' MSJ, Van Derostyne Decl. ¶ 8, Ex. A; Dckt. No. 118. Plaintiff claims he also told Van Derostyne that he believed he needed a single cell because his insomnia was causing aggression and bad behavior. Dckt. No. 117, Pl.'s Decl. ¶ 11. Van Derostyne declares that she did not believe that plaintiff was an immediate threat to himself or to others and that she would only have recommended a housing re-assignment if she believed that an inmate was an immediate threat to himself or to others. DUF 76, 80; Dckt. No. 118. Plaintiff fails to counter Van Derostyne's declaration with evidence that she was subjectively indifferent to his chronic insomnia and his claimed need for a single cell. At most, plaintiff has demonstrated an isolated incident of negligence as to defendant Van Derostyne, who had been plaintiff's clinician for over four years. In order to be actionable under section 1983, however, plaintiff must demonstrate more than an isolated incident of negligence. *See Williams v. Field*, 416 F.2d 483, 485 (9th Cir. 1969); *McGuckin*, 974 F.2d at 1060 ("A finding that the defendant's neglect of a prisoner's condition was an isolated occurrence or an isolated exception to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference." (internal citations and quotations omitted)); *Clinton v. De La Cruz*, No. 08-cv-4181-DOC, 2012 U.S. Dist. LEXIS 52380, at *17 (C.D. Cal. Mar. 7, 2012) ("An isolated incident in which prison guards negligently fail to protect an inmate from a physical attack does not constitute an actionable constitutional violation").

Because plaintiff has failed to present evidence upon which a reasonable jury could conclude that defendants Sahota, Van Derostyne, or Jaffe violated his Eighth Amendment rights with respect to his chronic insomnia, the court recommends that the motion for summary judgment be granted.

**IV.   Recommendation**

Accordingly, it hereby RECOMMENDED that:

1. Defendants' August 14, 2012 motion for summary judgment (Dckt. No. 109) be granted;

2. The Clerk be directed to enter judgment in defendants' favor; and

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 22, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE